Harvey S. Mars, Esq.
HSM (6107)
Law Office of Harvey S. Mars LLC
322 West 48th Street
New York, N.Y. 10036
(212) 765-4300
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
Local 802 Musicians Health Benefit Fund
By its Trustees Christopher Brockmeyer, Paul Libin,
Cathy Cozens, David Richards, Tino Gagliardi,
Andrew M. Schwartz, Thomas Olcott, Martha Hyde,
Sarah Cutler, and The Associated Musicians of
Greater New York, Local 802, AFM, AFL-CIO,

              Plaintiffs,    :   **COMPLAINT**

vs.    :   **Civil Action No. 18 CIV.**

And A Wall, LLC, and Catherine Russell,

              Defendants.
------------------------------------------------------------------------x

      Plaintiffs, by their counsel, Law Office of Harvey S. Mars. LLC, as and for their complaint against the Defendants, And A Wall, LLC and Catherine Russell (Company) respectfully allege as follows:

      This is an action by the trustees as fiduciaries of employee benefit plans for injunctive and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145. This action

arises from the failure of Employer to (a) permit an audit of the Employer's books and records for the period commencing January 1, 2013 through January 31, 2018 and pay contributions owed to the Funds identified by the audit, along with interest, liquidated damages, audit fees, attorney's fees and costs incurred.

## JURISDICTION AND VENUE

1.   The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§ 185(a), 1132(a)(3), 1132€(1), 1132(f) and 1145.

2.   Venue lies in this district under 29 U.S.C. §1132(e)(2), as the Funds are administered in this district.  Venue also lies in this district under 29 U.S.C. §185(a).

## THE PARTIES

3.   Plaintiff are Trustees and fiduciaries of the Funds within the meaning of 29 US.C. §1002(21)(A), as they have discretion and control over the assets and administration of the Funds.

4.   The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §1002(3) and §1002(37), with their principal place of business at 322 West 49th Street, New York, N.Y. 10036.  The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives; in accordance with Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §186(c)(5).

5.   The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the The Associated Musicians of

Greater New York, Local 802 (Local 802 and the AFM), AFL-CIO (the "Unions") and providing benefits to eligible participants.

6. Non-party Local 802, Associated Musicians of Greater New York, AFM ("Local 802") is a labor organization as defined by LMRA §§ 1 *et seq.* 29 U.S.C. § 151, *et seq.* that represents employees in an industry affecting commerce. Local 802, the exclusive representative of its members, enters into collective bargaining agreements that establish the terms and conditions of employment for musicians, *inter alia*, who perform work within its trade and geographic jurisdiction.

7. The collective bargaining agreements and the Trust Agreement set forth "terms of the plan" within the meaning of 29 U.S.C. §1132(a)(3) and 29 U.S.C. §1145.

8. The Employer is, and at all times relevant to this action has been, an "employer" within the meaning of 29 U.S.C. §1002(5) and the Trust Agreement. The Employer maintains an office at the Snapple Theater, 1627 Broadway, 4th Floor, New York, N.Y. 10019. Defendant Catherine Russell ("Russell") was for all relevant periods of time the principal owner of Defendant Company. She is a fiduciary of the Fund pursuant to its Trust indenture.

## FACTUAL BASIS FOR CLAIM

The Collective Bargaining Agreement, the Trust
Agreement and the Obligation To Contribute to the Funds

9. The Employer has at all times relevant to this action been party to a collective bargaining agreement with the Unions.

10. The Employer was bound to a collective bargaining agreement (CBA) with Defendants that extended for the period of time covered by this law suit.

11. At all times relevant to this action, the CBA has required the Employer to make contributions to the Funds on behalf of its employees who are covered by the CBA, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBA.

12. Along with the contributions, the Employer is also required to submit remittance reports to the Fund. The remittance reports provide the Employer's statement of the employees who performed work covered by the CBA and the number of hours each such employee worked in covered employment. The CBA also requires that it permit the Fund to engage in payroll audits to verify the amount of contributions that the Employer may owe.

13. The CBA provides that the Employer is bound to the Trust Agreement.

14. The Trust Agreement provides that if the Employer fails to remit contributions by the date due, the Employer is liable to the Funds for (i) the delinquent contributions; (ii) interests at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs.

15. The CBA provides that if an employer fails to remit contributions to the Funds when due, the funds are entitled to the remedies set forth in section 502(g)(2) of ERISA.

The Trust Agreement and the Obligation to Permit Audits

16. The Trust Agreement as well as the Fund Policy concerning audits and delinquencies require an Employer to submit to periodic audits. Specifically, the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with "the Employer's contributions to the Funds.

17. The Trust Agreement defines "pertinent books and records" to include but not be limited to:

(a) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;

(b) Payroll tax records submitted to federal and state governments, including Forms 941, W-2;

(c) Complete business income tax returns;

(d) Cash disbursements records;

(e) General ledgers;

(f) Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

(g) Any other records specifically requested by the funds' auditors, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

18. The Trust Agreement requires an Employer to submit to audit in order to verify that all contributions required under the CBA have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds and that covered employees are receiving the required benefits and/or credits.

19. The Trust Agreement provides that the Trustees may "apply for and be entitled to a mandatory injunction directing The Employer to produce its said books and records for audit."

20. The Trust Agreement provides that an Employer determined to owe contributions by an audit is required to pay, in addition to the contributions due, interest, liquidated damages, attorney's fees, audit fees, filing fees and costs.

21. Pursuant the Trust Agreement, as amended, interest is calculated at the rate of 1-1/2 percent per month (18% per year).

The Failure to Allow an Audit

22. On May 3, 2017 the Employer settled a lawsuit with the Plaintiff and Local 802 that sought delinquent health fund contributions that were owed to the Fund.

23. Pursuant to the Settlement Agreement ("Settlement"), the Employer was required to permit a full audit. The Settlement states that the matter was resolved. "Subject to the Health Fund's right to periodically audit the Employer to verify the amounts paid. The Employer and Russell shall take all necessary steps to ensure that the Health Fund's auditors are able to perform a complete audit." See Settlement ¶ 9.

24. The Fund's auditors contacted Russell on June 11 and June 19, 2018 by e-mail in order to schedule the required audit of the Employer's books and records for the time period January 1, 2013 through January 31, 2018. When Russell failed to respond to the e-mail requests on June 25, 2018, the Fund's auditor sent a formal written demand for the audit. Russell failed to respond to that demand as well.

## COUNT I

25. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

26. Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

27. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3) provides that a civil action may

be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

28. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan –

    (a) the unpaid contributions,

    (b) interest on the unpaid contributions,

    (c) an amount equal to the greater of –

        (i) interest on the unpaid contributions, or

        (ii) liquidated damages . . . in an amount not in excess of 20 per cent of the [unpaid contributions],

    (d) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (e) such other legal or equitable relief as the court deems appropriate . . ."

29. Section 502(g)(1) of ERISA, 29 U.S.C. §1132 (g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action . . ."

30. The Employer, by virtue of its failure to submit its books and records is subject to an injunction ordering it to submit immediately to such audits and is required to pay the contributions due according to such audits, interest, liquidated damages, audit fees, attorneys' fee, and costs.

-8-

31. The Employer, by virtue of its failure to submit its books and records, is further liable for an increased monthly contribution for each month during the period for which the books and records were not produced.

32. In accordance with the Trust Agreement, for each month in which an Employer failed to submit remittance reports and/or failed to submit pertinent books and records to the Funds' auditors within twenty days of written demand, the Employer's contribution rate due under the Trust Agreement provision is computed as stated therein.

33. In accordance with the Trust Agreement, for each month in which an Employer did submit remittance reports but failed to submit pertinent books and records for audit within twenty days of written demand, the Employer's increased monthly contribution rate due under this Trust Agreement provision is computed as stated therein.

34. The Employer is also required to pay interest, liquidated damages, audit fees, attorney's fees, and costs in accordance with the Trust Agreement and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

35. The Employer's failure to remit contributions to the Funds for hours worked by individuals performing covered work constitutes a failure to make contributions in accordance with the terms of the plan documents of the Funds in violation of Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, giving rise to an action under Section 502(1)(3) of ERISA, 29 U.S.C. §1132(a)(3).

## COUNT II

36. Plaintiffs repeal and reallege the allegations of the preceding paragraph as of fully set forth herein.

37. The Settlement, which was signed by Russell in her individual capacity and on behalf of And A Wall, Inc. constitutes a contract among the parties to this suit.

38. By failing to permit the audit as required by the settlement the defendants have breached their contractual obligations and are liable for breaching it.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs request that the Court enter a judgment and injunction:

1. Ordering the Employer to submit its complete books and records to a complete audit for the period commencing January 1, 2013 through January 31, 2018, including but not limited to records reflecting non-bargaining unit work engaged in by its Defendant's employees.

2. Ordering the Employer to pay (i) any delinquencies identified by the audit, (ii) interest on the contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment, (iii) an amount equal to the greater of a (a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, and (iv) the cost of the audits;

3. Awarding plaintiffs reasonable attorney's fees and costs of this action pursuant to Sections 502(g)(1) and (g)(2) of ERISA, 29 U.S.C. §§ 1132(g)(1) and (g)(2), and the Trust Agreement; and

4. Ordering such other legal and equitable relief as the Court deems proper.

Dated: New York, New York
October 16, 2018

**Law Office of Harvey S. Mars LLC**

By: _/s/ Harvey S. Mars_
Harvey S. Mars
HSM (6107)
322 West 48th Street
Sixth Floor
New York, N.Y. 10036
(212) 765-4300

*Counsel for Plaintiffs*

Local 802 Musicians Health Benefit Fund and The American Federation of Musicians, AFL-CIO

-10-